IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| JAMES C. EATON, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| v. | : | Civ. No. 13-722-RGA |
| JEFF WHITE'S AUTO INC., et al., | : | |
| Defendants. | : | |

James C. Eaton, Lewes, Delaware. Pro Se Plaintiff.

David W. Carickhoff, Jr., Esquire. Archer & Greiner, P.C., Wilmington, Delaware. Counsel for Defendants.

## MEMORANDUM OPINION

November 5, 2014
Wilmington, Delaware

*Rinhard G. Andrews*
**ANDREWS, U.S. District Judge:**

Plaintiff James C. Eaton appears *pro se* and has paid the filing fee. He filed this action pursuant to 18 U.S.C. §§ 1341, 1343, and 1964, all in relation to repairs made to his truck at an auto repair business located in Georgetown, Delaware. Before the Court is Defendants' motion to dismiss and Plaintiff's motion for discovery. (D.I. 25, 30).

## BACKGROUND

Jeff White's Auto Inc. sued Plaintiff on December 20, 2012, in the Justice of the Peace Court of the State of Delaware in and for Sussex County, Civ. Act. No. JP17-12-007012 (hereinafter, "the JP case") for $4,511.00 allegedly owed by Plaintiff for repairs made to his truck. (D.I. 26, ex. 1). Plaintiff answered the Complaint on January 14, 2013 and, on January 30, 2013, Jeff White's Auto Inc. filed a Bill of Particulars.

Plaintiff commenced this action on April 25, 2013 against Jeff White's Auto Inc., Jeff White's Autoworks, Inc., and Jeffrey A. White. (D.I. 1). The Complaint alleges wrongful acts occurred during, and following, the repair of Plaintiff's truck including installing used parts without Plaintiff's knowledge, repairs made without his consent, and threats when Plaintiff refused to pay for the repairs. The truck was initially repaired by Defendants in the Fall of 2011 and taken home by Plaintiff. In the late Spring of 2012, Plaintiff had the truck towed to Jeff White's Garage to repair a problem that had not been properly repaired the prior Fall. Plaintiff retrieved his vehicle in August 2012, and there was a dispute over retrieval of the truck, repairs and parts used, and the cost of the repairs. Plaintiff alleges that Defendants demanded payment for work that was not performed or completed, used the postal service to extort money from him for the alleged repairs, made telephone threats to Plaintiff and his spouse, stalked, and harassed him. The Complaint seeks "indemnification for fraud, extortion, telephone

fraud, threats of defamation, mail fraud, stalking, harassment, terrorist threats, and RICO Act."[1] (D.I. 1). The Complaint does not reference any statutes, but the civil cover sheet invokes 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 1964 (RICO). Plaintiff amended the *ad damnum* clause on June 12, 2013, seeking one million dollars including treble damages and punitive damages. (D.I. 3).

On May 15, 2013, Plaintiff filed a Counterclaim in the JP case against Jeffrey A. White, Jeff White's Autoworks Inc., and Jeff White's Auto, Inc. and sought $20,087.00 in damages. While paragraphs one through forty-seven of the instant Complaint and the JP Counterclaim are identical, the prayer for relief is not. The JP Counterclaim seeks "monetary damages, including all Court cost[s], legal fees and cost[s] for expert witnesses, any and all expenses related to this case including interest at the legal rate and such other and future relief to which the plaintiff is entitled at law." (D.I. 26, ex. 3).

In the instant action, Defendants were served on May 13, 2013, and they were to answer or otherwise plead to the Complaint on or before June 3, 2013. (*See* D.I. 4-6).

On May 28, 2013, Plaintiff and his spouse, Jeannie D. Eaton, filed another lawsuit against Defendants in the Court of Common Pleas for the State of Delaware in and for Sussex County, Civ. Act. No. CPU6-13-000564 (hereinafter, "the CCP case"). Paragraphs one through seventeen of the instant Complaint and paragraphs four through twenty of the CCP Complaint are, for the most part, identical. (D.I. 1, D.I. 26, ex. 4). The prayer for relief in the CCP Complaint seeks "indemnification for fraud, extortion, telephone fraud, threats of defamation, mail fraud, stalking, harassment,

---

[1]Presumably Plaintiff refers to a civil remedy under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964.

threats, theft, and mental anguish, fifty thousand dollars for monetary damages." (D.I. 26, ex. 4). The claims are based on the same facts as alleged in the instant Complaint and the JP Counterclaim. The CCP Complaint makes no mention of a RICO claim.

On June 4, 2013, trial was held in the JP Court on the claims and counterclaims asserted in the JP case. That day, judgment was entered. The Court *sua sponte* dismissed Jeff White's Auto Inc.'s claims with prejudice finding that it had violated 6 Del. C. § 4905A(b);[2] that Plaintiff was entitled to the return of monies paid to Jeff White's Auto, Inc. in the sum of $702.50; and that all other counterclaims were unsubstantiated. (D.I. 15, ex. 5). Neither party appealed. (*Id.* at ex. 6).

One month later, on July 5, 2013, Defendants moved to dismiss the CCP Complaint based upon the doctrine of res judicata. (*Id.* at ex. 7). On September 8, 2013, Jeffrey A. White died and a suggestion of death was filed in the CCP case.[3]

Defendants did not answer or otherwise appear in the instant action and, on September 19, 2013, default was entered. (D.I. 10). The application for a default judgment was scheduled to be heard on January 7, 2014. (D.I. 15, 20). On the same date, Defendants moved to set aside the entry of default, which Plaintiff opposed. (D.I. 17, 21). In the meantime, on February 12, 2014, the Court entered an order in the CCP

---

[2]Section 4905A(b) of The Auto Repair Fraud Prevention Act of 1996 provides that "the invoice shall state clearly if any used, rebuilt or reconditioned parts were used in the auto repair work and/or if a part of a component system supplied is composed of used, rebuilt or reconditioned parts."

[3]Although this Court was advised of death of Mr. Eaton, no party has filed a suggestion of death and no party has moved to substitute the proper party pursuant to Fed. R. Civ. P. 25. Defendants indicate that the co-administrators of the Estate of Jeffrey A. White are Stephen M. White and Phillip M. White.

3

case that granted Defendants' motion to dismiss, finding that the claims were barred by res judicata. (D.I. 26, ex. 8). The Order was not appealed. (Id. at ex. 9).

On May 9, 2014, this Court granted Defendants' motion to vacate the entry of default and permitted the filing of a responsive pleading. Defendants filed the pending motion to dismiss. (D.I. 25).

## STANDARD OF REVIEW

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558 (2007). "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Davis v. Abington Mem'l Hosp., 765 F.3d 236, 241 (3d Cir. 2014) (quoting Twombly, 550 U.S. at 555). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. See Williams v. BASF Catalysts LLC, 765 F.3d 306, 315 (3d Cir. 2014).

To determine whether a complaint meets the pleading standard as set forth in Twombly and Iqbal, the Court must: (1) outline the elements a plaintiff must plead to a state a claim for relief; (2) peel away those allegations that are no more than

4

conclusions and thus not entitled to the assumption of truth; and (3) look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (internal citations omitted). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).

## DISCUSSION

Subsequent to filing the instant case on April 25, 2013, Plaintiff filed a counterclaim in the JP case, and he and his spouse filed the CCP case. Both cases were resolved by the Delaware Courts. Defendants move to dismiss the instant Complaint on the grounds that the claims are barred by the doctrines of res judicata, collateral estoppel, and for failure to state a claim upon which relief may be granted. (D.I. 25). Plaintiff opposes the motion.

### Res Judicata and Collateral Estoppel

Defendants argue that all claims asserted in the Complaint should be dismissed with prejudice as barred by res judicata/claim preclusion on the grounds that they were litigated and adjudicated in the JP case and as barred by collateral estoppel/issue preclusion by entry of the Order dismissing the CCP case. Defendants note that the only claims not arguably covered by collateral estoppel are those described as being based on 18 U.S.C. §§ 1341, 1343, and 1964, which statutes set forth mail fraud, wire

5

fraud, and RICO. Plaintiff argues that he has "not actually" had his day in court because, in the JP case, he was only allowed his counterclaim for expenses that occurred in that case and not for federal criminal statutes.

"[U]nder the Full Faith and Credit Act, 28 U.S.C. § 1738, all 'judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of' the state from which they emerged. 'Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.'" *Metcalf v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, ___F. App'x___, 2014 WL 5032463, at *2 (3d Cir. Oct. 9, 2014) (quoting *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 (1982)). Therefore, to determine the effect of a Delaware court judgment, this Court is required to apply Delaware's claim and issue preclusion law. *Id.* (citing *R & J Holding Co. v. Redevelopment Auth. of Montgomery*, 670 F.3d 420, 426 (3d Cir. 2011)).

Under Delaware law, "an action is barred under the doctrine of res judicata where: (1) the original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original cause of action or the issues decided was the same as the case at bar; (4) the issues in the prior action must have been decided adversely to the appellants in the case at bar; and (5) the decree in the prior action was a final decree." *RBC Capital Mkts., LLC v. Education Loan Trust IV*, 87 A.3d 632, 634 (Del. 2014) (citation omitted). In addition, Delaware follows a transactional approach to res judicata. *See LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 193 (Del. 2009).

6

"Res judicata constitutes an absolute bar on all claims that were litigated or which could have been litigated in the earlier proceeding." *Hendry v. Hendry*, 2006 WL 4804019, at *8 (Del. Ch. 2006). Under the transactional approach, "in addition to showing that the same transaction formed the basis for both the present and former suits, the defendant must show that the plaintiff neglected or failed to assert claims which in fairness should have been asserted in the first action." *LaPoint*, 970 A.2d at 193-94 (citation and internal quotations omitted).

Collateral estoppel, also known as issue preclusion, refers to the preclusive effect of a judgment on the merits of an issue that was previously litigated or that could have been litigated. *Fairbank's Capital Corp. v. Milligan*, 234 F. App'x 21 (3d Cir. 2007). "'When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (quoting Restatement (Second) of Judgments § 27 (1982)). There are four requirements for the application of collateral estoppel: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Id.* (internal quotation marks and citations omitted).

With regard to the RICO claim, Defendants do not acknowledge that the instant Complaint was filed first - before Plaintiff's Counterclaim in the JP case and before the

7

case filed by Plaintiff and his spouse in the CCP case.[4] It was only in the first case, filed in this Court, that Plaintiff sought recovery under the RICO Act. The RICO claim was never considered by the State Courts although the predicate acts were. Indeed, it is unclear if the CCP Court was aware of the case filed in this Court. The CCP Court found that all of the claims raised in its case "relate to, or originated from, the repair of their vehicle by Mr. White and/or his repair shop, the subsequent strife between the partes related to those repairs, and/or the collection of the alleged debt as a consequence of the work done on the vehicle. All of the Eatons' claims either were raised in the Justice of the Peace Court action, or could have been." (D.I. 26, ex. 8 at 5).

Having reviewed the exhibits submitted by the parties, the Court agrees that Plaintiff's claims of fraud, extortion, telephone fraud, threats of defamation, mail fraud, stalking, harassment, and terrorist threats are barred by either res judicata or collateral estoppel as they were previously litigated and resolved by final judgment in the JP Court and, as determined by the CCP Court, barred by res judicata. With regard to these claims, there is no dispute that the factors set forth by Delaware law are met. The Delaware Courts had jurisdiction over the subject matter and the parties. The parties from the original suit are the present parties. One case was decided in favor of Plaintiff and the other was adversely decided against him. Both decisions were final. The claims in the instant Complaint, with the exception of the RICO claim, are the same

_____

[4] The Complaint in the JP case was filed first. It was filed against Plaintiff, and he did not file his counterclaim in that case until after he initiated the lawsuit in this Court.

8

or otherwise sufficiently related to the claims raised in the JP and CCP cases so as to bring them within the ambit of the prior rulings. *See RBC Capital Markets*, 87 A.2d at 643 (analyzing whether the cause of action asserted was the "same" as that later asserted). This Court is bound by the prior determinations of the Delaware Courts and, therefore, the Court will grant the motion to dismiss all of the above-mentioned claims (other than RICO) by reason of res judicata and collateral estoppel.

## Failure to State a Claim

Defendants also move for dismissal of the RICO and federal criminal claims on the grounds that they fail to state a claim upon which relief may be granted. Plaintiff seems to indicate that he does not raise mail fraud and wire fraud as separate claims, but state they are the tools used by Defendants to insure their success. (D.I. 28).

To the extent that Plaintiff attempts to raise separate claims under 18 U.S.C. § 1341, for mail fraud, and 18 U.S.C. § 1343, for wire fraud, the claims fail. Section 1341 is a criminal statute that does not give rise to a private right of action. *Thompson v. Michels*, 574 F. App'x 196, 197 (3d Cir. 2014). Similarly, § 1343 provides for no private right of action for use by a litigant. *Obianyo v. Tennessee*, 518 F. App'x 71, 72 (3d Cir. 2013). Moreover, individual citizens do not have a constitutional right to the prosecution of alleged criminals. *See Capogrosso v. Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009). Accordingly, the Court will grant the motion to dismiss these claims.

With regard to the RICO claim, Defendants contend that the predicate acts for the RICO claim were dismissed with prejudice and, therefore, the RICO claim cannot survive. Defendants further argue that, even assuming Plaintiff can establish predicate

9

acts, the Complaint fails to establish the continuity factor of the pattern element that is
required in a RICO action.

A RICO claim may be pursued even though independent claims for predicate
acts upon which the RICO claim is based are no longer viable.[5] *See e.g., Halperin v.
Jasper*, 723 F. Supp. 1091, 1096-97 (E.D. Pa. 1989) (there does not appear to be any
authority for the proposition that predicate acts which are cognizable independent
claims, substantively, but which are barred by the statute of limitations, cannot serve as
predicate acts for a RICO claim); *Hill v. Equitable Bank*, 655 F. Supp. 631, 655 (D.
Del.1987) (RICO claim can survive even if recovery for predicate acts that compromise
part of RICO claim cannot survive), *aff'd on other grounds*, 851 F.2d 691 (3d Cir. 1988).

To advance a civil claim under RICO, Plaintiff must allege: "(1) conduct (2) of an
enterprise (3) through a pattern (4) of racketeering activity." *Lum*, 361 F.3d at 223
(citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U .S. 479 (1985)). A "pattern of
racketeering activity" requires at least two "predicate acts," such as mail or wire fraud.
*Id.;* 18 U.S.C. § 1961(1),(5).

Plaintiff appears to base his RICO pattern of racketeering on allegations that
Defendants committed mail fraud under 18 U.S.C. § 1341 and wire fraud under 18
U.S.C. § 1343. To successfully plead predicate acts of mail and wire fraud, a plaintiff

---

[5]RICO was not designed to provide redress to one injured by another's
commission of predicate acts. Rather, RICO was designed to provide redress to one
injured by another's use of certain predicate acts to invest in, acquire or maintain an
interest in, or conduct the affairs of an enterprise whose activities affect interstate
commerce. *Morley v. Cohen*, 610 F. Supp. 798, 808 (D. Md.1985). "To interpret [the
offenses composing the predicate acts] to have more than a definitional purpose would
be contrary to the legislative intent of Congress." *United States v. Forsythe*, 560 F.2d
1127, 1135 (3d Cir.1977).

10

must allege that the defendant used the U.S. mail and interstate wires in furtherance of a scheme or artifice to defraud. *See Kolar v. Preferred Real Estate Investments, Inc.*, 361 F. App'x 354, 361-64 (3d Cir. 2010) Where a plaintiff relies on mail and wire fraud as a basis for a RICO violation, "the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity." *Lum*, 361 F.3d at 223 (internal citation omitted).

In addition, Plaintiff must demonstrate "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989). Continuity can be proved by showing "either . . . a closed period of repeated conduct, or . . . past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241.

As currently pled, the Complaint does not meet the pleading requirements of Rule 9(b). All that is clear from the Complaint is that Defendants allegedly made multiple unjustified demands and threats for payment allegedly owed due to repairs made to Plaintiff's truck. The claims are not plead with specificity. In addition, the allegations of the Complaint fail to meet the continuity test. It alleges that in the Fall of 2011 Plaintiff took his truck home following repairs that were to have been made by Defendants. In the late Spring of 2012, Plaintiff had the truck towed back to Jeff White's garage to repair a problem that was not properly repaired the prior Fall. Plaintiff retrieved his vehicle in August 2012. Plaintiff alleges that, thereafter, Defendants demanded payment for work that was not completed, used the postal service to extort money from him for the alleged repairs, made telephone threats to Plaintiff and his

11

spouse, and stalked, harassed, and tried to extort money from Plaintiff. The Complaint provides no specific dates and, hence, the RICO is not adequately pled.

In opposition to the motion to dismiss, Plaintiff indicates that the acts of mail and wire fraud occurred when Jeffrey White made telephone calls to Plaintiff's home on a date in March 2012, and on August 29 and September 3, 2012, with threats of arrest; and White mailed letters to Plaintiff - one dated August 17, 2012, and one dated prior to October 24, 2012 - regarding the repairs, threatening criminal charges and requesting payment.[6]  (D.I. 28, exs. F, G). These specific facts are not included in the instant Complaint. However, even were Plaintiff given leave to amend to correct the pleading deficiency to add the facts he relates in his opposition to the motion to dismiss, the Court finds that amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962).

Predicate acts that occurred over a twelve-month period fail to state a claim under RICO. See Hughes v. Consol-Pennysylvania Coal Co., 945 F.2d 594, 610-11 (3d Cir. 1991) (predicate of acts of fraud and threats over twelve months not sufficient); Stoss v. Singer Fin. Corp., 2010 WL 678115, *7 (E.D. Pa. 2010) (stating that the Third Circuit has held twelve months is not a substantial period of time for RICO purposes and rejecting RICO claims where plaintiff failed to allege the defendant's scheme took place over substantial period of time). In Plaintiff's opposition he references alleged predicate acts that occurred from March 2012 through October 2012, a period of time

---

[6]Other letters that Plaintiff refers to were not authored by any of the defendants.

12

that is not considered a substantial period of time of continuing activity for purposes of
RICO.

The instant Complaint fails to state a RICO claim upon which relief can be
granted. Therefore, the Court will grant the motion to dismiss the RICO claims pursuant
to Rule 12(b)(6).

## CONCLUSION

For the above reasons, the Court will grant Defendants' motion to dismiss and
will deny as moot Plaintiff's motion for discovery. (D.I. 25, 30). The Court finds that
amendment of the RICO claim is futile. An appropriate order will be entered.

13